J-S84020-16

2017 PA Super 36

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRITTANY MCFADDEN | |
| Appellant | No. 635 EDA 2014 |

Appeal from the Judgment of Sentence Dated January 27, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009375-2013
MC-51-CR-0025869-2013

BEFORE:  OLSON, J., SOLANO, J., and FITZGERALD, J.[*]

OPINION BY SOLANO, J.:                                              **FILED FEBRUARY 15, 2017**

Appellant Brittany McFadden appeals from the judgment of sentence following a bench trial and convictions for aggravated assault, conspiracy to commit aggravated assault, simple assault, recklessly endangering another person, and criminal mischief. Trial Ct. Op. at 1.[1] We affirm.

At a bench trial held on December 5, 2013, the victim, Michelle Tolbert, testified that on the afternoon of June 21, 2013, the last day of the school year, she was working for the City of Philadelphia as a crossing guard. N.T., 12/5/13, at 13, 28. While she was at her designated street

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(3), 903(c), 2701(a), 2705, and 3304(a)(2), respectively.

corner, a car pulled up and Sharday McFadden, a relative of Appellant Brittany McFadden, exited the car. *Id.* at 17, 111. Ms. Tolbert did not know Sharday McFadden. *Id.* at 17. After a heated discussion, Sharday McFadden punched Ms. Tolbert in the face. *Id.* at 18-20.[2] A fray ensued, which ended after the two women fell to the ground. *Id.* Ms. Tolbert resumed helping children cross the street. *Id.* at 20, 26. Ms. Tolbert's husband, Torrey Caldwell, who normally accompanies Ms. Tolbert on her work shift but was running late that day, arrived and called the police. *Id.* at 24-25.

Meanwhile, Sharday McFadden made a phone call. N.T. at 20. Within two or three minutes, a group of people arrived, including Appellant, who was also unknown to Ms. Tolbert. *Id.* at 21-22, 36. Sharday McFadden again approached Ms. Tolbert, who was standing against her truck. *Id.* at 39.[3] Meanwhile, a group of children from a nearby daycare had stopped by to give Ms. Tolbert a card to thank her for her help during the school year. *Id.*

_____

[2] The subject of the conversation and the motivation for the subsequent fight were excluded from Ms. Tolbert's testimony as hearsay. *See* N.T. at 14-16. According to police documents, it had something to do with Ms. Tolbert's intervention to stop a fight among schoolchildren, including a McFadden relative. *See* Ex. C-5 (Ms. Tolbert's statement to the police); Ex. C-7 (police incident report); N.T. at 14 (there was an incident between some children), 93 (testimony that some schoolgirls were going to fight), 110-14 (testimony that Sharday McFadden came to the corner because some schoolgirls wanted to fight her cousin).

[3] Ms. Tolbert refers to her vehicle as both her "truck" and her "car"; her husband testified that she drove a Jeep to work that day. *See* N.T. at 38, 39, 57.

at 39. Shortly after Ms. Tolbert placed the card inside her vehicle, Sharday McFadden again began punching her. *Id.* at 22, 38-39. As the two fell to the ground, Appellant approached and joined in the fray. *Id.* Ms. Tolbert was on top of Sharday McFadden, and Appellant "on top of [Ms. Tolbert] from the back." *Id.* at 22. Appellant struck Ms. Tolbert on the back of her head and scratched the sides of her face. *Id.* at 22-23. Mr. Caldwell then pulled Sharday McFadden and Appellant off of his wife, and he and his wife drove away. *Id.* at 24-25.[4]

Mr. Caldwell testified that when he first arrived, he noticed that Ms. Tolbert's shirt was ripped, her vest was off, and her hat was missing. N.T. at 53-54. There was a car parked at the corner, and he saw a person later identified as Sharday McFadden[5] exit and punch Ms. Tolbert. *Id.* at 54. He testified that he tried to break up the fight while Ms. Tolbert defended herself. *Id.* As he was trying to end the fight, another car arrived and three or four men surrounded him and began pulling him. *Id.* at 54-55, 57. Mr.

_____

[4] On cross-examination, Appellant confronted Ms. Tolbert with a statement that she gave to the police on the day of the incident. *See* N.T. at 41-43. In that statement, Ms. Tolbert said that Sharday McFadden, not Appellant, had been the one to scratch her face, and that she was knocked to the ground because Appellant jumped on top of her. *Id.* Appellant also presented the transcript of the preliminary hearing, where Ms. Tolbert testified that Appellant was not only hitting her, but also pulling on her and trying to get her off of Sharday McFadden. *Id.* at 45-46.

[5] Mr. Caldwell did not identify the assailant as Sharday McFadden, but as a thin, light-skinned woman who was not present in the courtroom. N.T. at 54, 57.

Caldwell then called the police. *Id.* at 57. His wife had stopped fighting and was leaning against her Jeep, where he saw some children give her a thank you card. *Id.* at 57-58.

Mr. Caldwell testified that, as Ms. Tolbert was facing her car and Mr. Caldwell was distracted by the new arrivals, Appellant approached and punched Ms. Tolbert twice in the head. N.T. at 58-59. Mr. Caldwell pushed Appellant away, and she "might have tripped over one of the guys that were there." *Id.* at 61. He did not see Ms. Tolbert hit Appellant at any point. *Id.* at 62. Sharday McFadden returned and again began to hit Ms. Tolbert. *Id.* at 59-60.[6] Mr. Caldwell testified that the fight ended after his wife "grabbed [Sharday McFadden] and choke-slammed her on the ground" and when he became fearful due to the number of people from the neighborhood who had arrived to watch the fight. *Id.* at 63.

Barbara Kener lives in the area of the incident, is Appellant's neighbor, and has known Appellant since birth. N.T. at 83-84. Ms. Kener testified she was at home on the day of the incident, but went out to the street when she noticed her granddaughter's book bag lying on her steps. *Id.* at 92. She ran to the corner at the same time as Appellant arrived. *Id.* at 96. When they got there, Sharday McFadden and Ms. Tolbert were fighting. *Id.* at 85-86.

---

[6] Appellant questioned Mr. Caldwell on cross-examination regarding the statement he made to the police after the incident, in which he stated that at the beginning of the third fight he had intercepted a punch from Sharday McFadden. N.T. at 66-69.

Ms. Kener testified that Appellant tried to stop the fight, but Mr. Caldwell grabbed Appellant's arm and threw her to the ground. *Id.* at 86-87, 94. Ms. Kener said she never saw Appellant hit Ms. Tolbert. *Id.* at 87. She testified that Appellant has a reputation for being "a very quiet person" who "doesn't bother anybody" and who is not the type of person to initiate conflict. *Id.* at 90-91.

Sameerah Chamberlain, Ms. Kener's ten-year-old granddaughter (and Sharday McFadden's cousin), testified that after walking home from school that day she saw the fight start when Ms. Tolbert "snuck"[7] Sharday McFadden. N.T. 102-103. She later saw Appellant approach the corner with Ms. Kener. *Id.* at 103. Miss Chamberlain said she did not observe Appellant ever strike Ms. Tolbert. *Id.* at 105. Rather, according to Miss Chamberlain, Appellant tried to separate the two fighters, until Mr. Caldwell "slammed her on the ground." *Id.* at 104.

Appellant testified that she went to the corner that day to retrieve Sharday McFadden's five-year-old daughter, who was watching the fight between her mother and Ms. Tolbert. N.T. at 121. When she arrived at the corner, the women had already begun fighting, and none of the onlookers were trying to stop them. *Id.* at 118-19, 123. Appellant testified that she attempted to break up the fight, but was slammed on the ground by Mr.

---

[7] Miss Chamberlain explained that she meant that "[Ms. Tolbert] hit [Sharday McFadden] when she wasn't looking at her." N.T. at 115.

Caldwell. ***Id.*** at 119-20, 123. Appellant testified that she tried to pull Sharday McFadden out from underneath of Ms. Tolbert, and did not put her hands on or strike Ms. Tolbert. ***Id.*** at 119-20.[8] Appellant was pregnant at the time of the altercation, but the trial court sustained the Commonwealth's objections to testimony about that fact. ***Id.*** at 70, 84, and 120.

On January 27, 2014, after finding Appellant guilty of the crimes listed above, the trial court sentenced Appellant to a total of six to twelve months of incarceration followed by two years' probation. Trial Ct. Op. at 1. On February 26, 2014, Appellant filed a timely notice of appeal to this Court. ***Id.*** After significant delays regarding assembly of the record, the trial court filed a Rule 1925(a) opinion on January 21, 2016. Trial Ct. Op. at 1.[9]

---

[8] The trial court did not find Appellant's testimony to be credible. Trial Ct. Op. at 4.

[9] In June 2014, this Court sent a notice to the trial court about its delinquency in assembling the record. Ultimately, the record that was assembled did not contain critical transcripts of the trial court proceedings. On June 3, 2015, one year after our delinquency notice, we granted a motion by Appellant to remand this case to the trial court for inclusion of the necessary transcripts. Meanwhile, Appellant suffered a failure by her counsel to comply with the trial court's order to file a Rule 1925(b) statement of errors complained of on appeal, resulting in the trial court's issuance of an opinion asserting that all issues had been waived. Failure to file a Rule 1925(b) statement constitutes such ineffective assistance of counsel that it entitles the represented criminal defendant to restoration of her waived appellate rights, ***Commonwealth v. Halley***, 870 A.2d 795, 800-01 (Pa. 2005), a fact Appellant noted in her remand motion. Accordingly, our June 3, 2015 remand order directed Appellant's counsel to file a Rule 1925(b) statement and directed the trial court to issue a supplemental Rule 1925(a) opinion 30 days thereafter. Although Appellant filed a Rule 1925(b)

*(Footnote Continued Next Page)*

Appellant presents the following issues for our review:

[1.] WAS THE EVIDENCE INSUFFICIENT, AS A MATTER OF LAW, TO SUSTAIN APPELLANT'S CONVICTION AND [JUDGMENT] OF SENTENCE FOR AGGRAVATED ASSAULT, F-2 [(]18 PA. C.S.A. [§] 2702(A)(3)[)], SINCE THERE WAS NO EVIDENCE THAT THE COMPLAINANT, A SCHOOL CROSSING GUARD, IS WITHIN THE PROTECTED CLASS OF PERSONS SPECIFIED IN 18 PA. C.S.A [§] 2702(C)?

[2.] DID THE TRIAL COURT ERR AND ABUSE ITS DISCRETION IN SUSTAINING AS "NOT RELEVANT" TESTIMONY REGARDING APPELLANT'S BEING PREGNANT AT THE TIME OF THE INCIDENT?

Appellant's Brief at 2.

## Sufficiency of the Evidence

Our standard of review for a sufficiency of the evidence challenge is well established:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

***Commonwealth v. Fortune***, 68 A.3d 980, 983 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted), ***appeal denied***, 78 A.3d 1089 (Pa. 2013).

*(Footnote Continued)* ───────────

statement on June 24, 2015, the trial court did not file its Rule 1925(a) opinion until nearly seven months later. We admonish the trial court and appellate counsel that they are required to comply with this Court's rules, deadlines, and orders. Their failures to do so in this case are unacceptable.

Appellant was convicted of aggravated assault pursuant to 18 Pa.C.S § 2702(a)(3), which states that "a person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." Subsection (c) lists 38 groups of persons, including "police officers . . . firefighters, probation/parole officers, sheriffs, prison authorities, judges, and numerous other public servants." ***Commonwealth v. Rahman***, 75 A.3d 497, 501 n.7 (Pa. Super. 2013).[10]

_____

[10] Section 2702(c) reads:

> The officers, agents, employees and other persons referred to in subsection (a) shall be as follows:
>
> (1) Police officer.
>
> (2) Firefighter.
>
> (3) County adult probation or parole officer.
>
> (4) County juvenile probation or parole officer.
>
> (5) An agent of the Pennsylvania Board of Probation and Parole.
>
> (6) Sheriff.
>
> (7) Deputy sheriff.
>
> (8) Liquor control enforcement agent.
>
> (9) Officer or employee of a correctional institution, county jail or prison, juvenile detention center or any other facility to which the person has been ordered by the court pursuant to a petition alleging delinquency under 42 Pa.C.S. Ch. 63 (relating to juvenile matters).

*(Footnote Continued Next Page)*

*(Footnote Continued)*

(10) Judge of any court in the unified judicial system.

(11) The Attorney General.

(12) A deputy attorney general.

(13) A district attorney.

(14) An assistant district attorney.

(15) A public defender.

(16) An assistant public defender.

(17) A Federal law enforcement official.

(18) A State law enforcement official.

(19) A local law enforcement official.

(20) Any person employed to assist or who assists any Federal, State or local law enforcement official.

(21) Emergency medical services personnel.

(22) Parking enforcement officer.

(23) A magisterial district judge.

(24) A constable.

(25) A deputy constable.

(26) A psychiatric aide.

(27) A teaching staff member, a school board member or other employee, including a student employee, of any elementary or secondary publicly funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

(28) Governor.

*(Footnote Continued Next Page)*

The trial court found that the victim of the assault, Ms. Tolbert, was within the classes of persons identified under Subsections 27 and 20 of Section 2702(c). Trial Ct. Op. at 6. Section 2702(c)(27) lists a teacher, school board member, or "other employee . . . of any elementary or secondary publicly funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

(29) Lieutenant Governor.

(30) Auditor General.

(31) State Treasurer.

(32) Member of the General Assembly.

(33) An employee of the Department of Environmental Protection.

(34) An individual engaged in the private detective business as defined in section 2(a) and (b) of the act of August 21, 1953 (P.L.1273, No.361), known as The Private Detective Act of 1953.

(35) An employee or agent of a county children and youth social service agency or of the legal representative of such agency.

(36) A public utility employee or an employee of an electric cooperative.

(37) A wildlife conservation officer or deputy wildlife conservation officer of the Pennsylvania Game Commission.

(38) A waterways conservation officer or deputy waterways conservation officer of the Pennsylvania Fish and Boat Commission.

18 Pa.C.S. § 2702(c).

her employment or because of his or her employment relationship to the school." 18 Pa.C.S. § 2702(c)(27). Section 2702(c)(20) includes, "[a]ny person employed to assist or who assists any Federal, State or local law enforcement official." *Id.* § 2702(c)(20). The trial court stated:

> The circumstantial evidence clearly proves Miss Tolbert falls within either the "other employee" category as a crossing guard, due to her relationship with the school by crossing students to the other side of public streets, or that working in her capacity as a crossing guard, Miss Tolbert was doing her duty to serve the community to safely escort children across busy streets, similarly to local police officers.

Trial Ct. Op. at 6.

Appellant argues that Ms. Tolbert did not fall under either subsection. Appellant's Brief at 7-9. According to Appellant, not only does the aggravated assault statute not specifically list "crossing guards" anywhere in Subsection (c), but Ms. Tolbert testified that she was employed by the City of Philadelphia, not by a school, making her ineligible for inclusion under the plain text of Subsection (c)(27). *Id.* at 7-9 (citing N.T., 12/5/13, at 13). Appellant adds that because no evidence was presented regarding Ms. Tolbert's employment or the city department in which she worked ("[p]olice, school district, streets, recreation, etc."), she should also not have been deemed included under Subsection (c)(20). *Id.* at 7-9 (citing N.T. at 13).

The Commonwealth counters that "[t]he aggravated assault statute is broadly drawn when it comes to school-related actors, and extends its protection to anyone acting in the scope of his or her employment or

- 11 -

because of his or her employment relationship to the school." Commonwealth's Brief at 6 (footnote omitted). While admitting that Ms. Tolbert was employed by the City of Philadelphia and thus was not a school employee, the Commonwealth claims that the broad wording of Section 2702(c)(27) is sufficient to encompass school crossing guards. *Id.* The Commonwealth makes no separate argument regarding Subsection (c)(20).

Whether assaulting a school crossing guard is encompassed within Section 2702 is a question of first impression for a Pennsylvania appellate court. Its resolution requires construction of Section 2702. "In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law." *Commonwealth v. Stevenson*, 850 A.2d 1268, 1271 (Pa. Super. 2004) (*en banc*) (citation omitted). In making this determination, we are guided by the Statutory Construction Act, *Commonwealth v. Merolla*, 909 A.2d 337, 345 (Pa. Super. 2006), which dictates:

**§ 1921. Legislative intent controls**

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921. "As a general rule, the best indication of legislative intent is the plain language of a statute." **Commonwealth v. Bradley**, 834 A.2d 1127, 1132 (Pa. 2003).

Because the Commonwealth places primary reliance on Section 2702(c)(27), we first examine whether a crossing guard like Ms. Tolbert is included under that provision. We conclude that she is not. The clear and unambiguous language of this provision, which we are beholden to uphold, **see** 1 Pa.C.S. § 1921(b); **Bradley**, 834 A.2d at 1132, states that, to be covered, Ms. Tolbert had to be an "employee" of a publicly-funded, private, or parochial school who was "acting in the scope of his or her employment or because of his or her employment relationship to the school." 18 Pa.C.S. § 2702(c)(27).[11] Ms. Tolbert was not such an employee. Rather, Ms. Tolbert testified that she was employed as a crossing guard by the City of Philadelphia. **See** N.T. at 13. The Commonwealth concedes that crossing guards in Philadelphia are employed by the City, and not by the School District of Philadelphia, a separate legal entity. **See** Appellee's Brief at 6 n.1. Therefore, Section 2702(c)(27) does not apply to Ms. Tolbert.

The Commonwealth observes that Section 2702(c)(27) applies both to a person "acting in the scope of his or her employment" and to someone

---

[11] The statute applies to "[a] teaching staff member, a school board member or other employee, including a student employee." Ms. Tolbert was not a teacher, school board member, or student. Therefore, the only applicable term is "other employee."

acting "because of his or her employment relationship to the school." It declares that Ms. Tolbert "was acting in an employment 'relationship' to the school, regardless of her actual employer," adding: "In Philadelphia, school crossing guards are employed by the police department; nevertheless they have an obvious 'employment relationship' with the school system." Commonwealth Brief at 6, 6 n.1. The Commonwealth continues:

> [H]ad the General Assembly sought to impose liability for aggravated assaults perpetrated only against school employees, the broader words "employment relationship" would serve no purpose. Giving effect to every word of the statute, it is presumed that the legislature intended to protect school crossing guards under subsection (c)(27) even if they are not direct employees of the school. Ms. Tolbert was clearly within the statutory definition because the statute includes anyone with an "employment relationship to the school." 18 Pa.C.S. § 2702(c)(27).

*Id.* at 6-7. We disagree.

While the scope of Ms. Tolbert's employment as a school crossing guard certainly related to a school or schools, the statute still requires that she be a school "employee" to fall under Section 2702(c)(27). The clause stating that the provision applies to an employee while acting within the scope of employment or "because of his or her employment relationship with the school" merely clarifies that whether the employee is acting within the scope of his or her employment is not determinative of whether Section 2702(c)(27) applies. But it does not remove the requirement of employment altogether. The Commonwealth's declaration that Ms. Tolbert had an "obvious 'employment relationship' with the school system" adds nothing to

- 14 -

this analysis. She may indeed have had a "relationship" to the school system by virtue of her work as a school crossing guard, but that did not establish that she had an *employment* relationship with it.

The clear wording of the statute compels this interpretation, but even if the statute were not explicit, we would reach the same result. We are supported in our interpretation by Section 2702's legislative history. *See* Statutory Construction Act, 1 Pa.C.S. § 1921(c)(7) (if words of statute are not explicit, Legislature's intention may be ascertained by considering "contemporaneous legislative history").

Subsection (c)(27) was added to the aggravated assault statute in December 1998. *See* Act No. 1998-159, § 1, P.L. 1245 (Dec. 21, 1998). Before that amendment, Section 2702 addressed schools in its Subsection (a)(5), which made a person guilty of aggravated assault if he —

> attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member, other employee or student of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school.

Act No. 1996-75, § 1, P.L. 478 (Jul. 2, 1996). In July 1998, we interpreted that provision in *Commonwealth v. Scott*, 546 A.2d 96 (Pa. Super. 1998), *appeal denied*, 563 A.2d 497 (Pa. 1989), to mean that the statute applied to an assault on any student, regardless of whether the student was an employee of the school. We reasoned that the provision referred to an "other

- 15 -

employee *or student*," which suggested that the student did not have to be an employee, and we relied on legislative history showing that the words "or student" had been added in 1980 because of a concern with assaults on students in schools. *Scott*, 546 A.2d at 98-100 (emphasis added). The Legislature's December 1998 amendment overturned this interpretation by changing the phrase "other employee or student" in Section 2702(a)(5) to "or other employee, including a student employee." That change made it clear that only an "employee" was intended to be covered under that clause and that a student was covered only if he or she was a "student employee." At the same time, the Legislature enacted Section 2702(c)(27) and employed identical wording in that provision to that in amended subsection (a)(5).[12] We therefore conclude that the limitation to school "employees" in subsection (c)(27) was deliberate.

Because we conclude that the trial court erred in holding that Ms. Tolbert fell within the ambit of Section 2702(c)(27), we hold that Appellant could not be convicted of aggravated assault on that basis. We therefore turn to whether Ms. Tolbert could be convicted under Section 2702(c)(20), which applies to assaults on "[a]ny person employed to assist or who assists

---

[12] Coverage of some student non-employees was restored by 2013 amendments that added protection for children under 6 years of age and children under 13 years of age. Those new subsections cover all children, not just students. *See* Act No. 2014-118, § 2, P.L. 1198 (Dec. 18, 2013) (adding Section 2702(a)(8) and (9)).

any Federal, State or local law enforcement official." 18 Pa.C.S. § 2702 (c)(20). We note that, unlike subsection (c)(27), this subsection does not require an employer–employee relationship; it applies to all who assist law enforcement and who are assaulted "in the performance of duty." *See id.* § 2702(a)(3), (c)(20).

It is undisputed that the altercation at issue here occurred while Ms. Tolbert was acting as a crossing guard pursuant to her employment with the City. The assault occurred during the victim's shift while she was standing on her assigned street corner, performing her job tasks, and wearing a uniform. *See* N.T. 13-14, 20, 26. Ms. Tolbert's assigned job was to help students to cross the street, and she was positioned somewhere near a daycare center as she did so. *See id.* 25, 39, 58. As the trial court observed: Ms. Tolbert's "job is to help school children cross the street. Her hours are during the dismissal time when the children are coming and going to school. She has a uniform pertaining [to her job]." *Id.* at 180.

We conclude that there was sufficient evidence presented at trial to include Ms. Tolbert under Section 2702(c)(20). As noted by the trial court, while "working in her capacity as a crossing guard, Miss Tolbert was doing her duty to serve the community to safely escort children across busy streets, similarly to local police officers." Trial Ct. Op. at 6. While the Commonwealth failed to present evidence at trial that the victim's

employment by the City was through its police department,[13] Ms. Tolbert's job tasks may easily be characterized as providing assistance to local law enforcement. Indeed, for this reason, the Commonwealth Court has held that school crossing guards in Philadelphia may be subject to the same rules of conduct applicable to City police officers. *Civil Serv. Comm'n of Phila. v. Wiseman*, 501 A.2d 350, 353 (Pa. Cmwlth. 1985), *appeal denied*, 538 A.2d 880 (Pa. 1987).[14]

Appellant argues that several Pennsylvania statutes suggest that school crossing guards do not qualify as law enforcement officers. *See* Appellant's Brief at 8-9 (citing Borough Code, 8 Pa.C.S. § 1127; Third Class City Code, 11 Pa.C.S. § 12010; First Class Township Code, 53 P.S. § 56416; and Second Class Township Code, 53 P.S. § 66915). Notably, none of these statutes applies to crossing guards in Philadelphia, a city of the first class. *See* City Classification Law § 1, 53 P.S. § 101 (classifying cities with populations of one million or more as cities of the first class). The statutes state that school crossing guards are ineligible for the employment benefits,

---

[13] Although the Commonwealth states in its brief that Ms. Tolbert is employed by the Philadelphia Police Department, Commonwealth Brief at 6 n.1, there is no support for that statement in the evidence presented at trial.

[14] Although the Commonwealth Court's decisions are not binding on this Court, *see NASDAQ OMX PHLX, Inc. v. PennMont Sec.*, 52 A.3d 296, 308 n.7 (Pa. Super. 2012), the court's decision in *Wiseman* is informative when we consider whether a crossing guard is someone who assists local law enforcement for purposes of Section 2702(c)(20).

unemployment benefits, pensions, or collective bargaining rights that pertain to policemen, but those stipulations do not show that crossing guards are not employed to assist law enforcement — the pertinent requirement under Section 2702(c)(20). More to the point, the statutes uniformly define crossing guards' duties as management of traffic and pedestrians in areas identified by the municipal police force, and they call for training and assistance to be provided to the crossing guards by the local police department. *See* 8 Pa.C.S. § 1127(b)(2), (3); 11 Pa.C.S. § 12010(b)(1), (c)(1); 53 P.S. §§ 56416(b), 66915(c). To the extent Appellant argues that these statutes are relevant to assessment of crossing guards' duties and responsibilities, Appellant's argument bolsters the conclusion that crossing guards are persons who assist local law enforcement. Appellant makes no suggestion that the duties of crossing guards in Philadelphia are different from those in these other classes of municipalities, and, indeed, her argument presupposes that they are similar.

We conclude that Philadelphia school crossing guards like Ms. Tolbert are persons who assist local law enforcement and therefore are within the category of persons listed under 18 Pa. C.S. § 2702(c)(20). We therefore hold that there was sufficient evidence for the trial court to find Appellant guilty of aggravated assault pursuant to 18 Pa.C.S § 2702(a)(3).

**Admission of Evidence**

In her second issue, Appellant complains that the trial court erred by sustaining the Commonwealth's objections to testimony that Appellant was pregnant at the time of the assault. Appellant's Brief at 10 (citing N.T. at 70, 84, and 120). According to Appellant, the testimony was relevant "to show the extent of her involvement in the fight." *Id.* Appellant asserts that it is the purview of the fact-finder to determine whether Appellant's pregnant status actually affected her involvement in the incident. *Id.*

The trial court excluded this testimony as irrelevant because "[t]here is no rational relationship between pregnancy and the propensity to engage in an altercation. There is no reason to believe that a woman would avoid fighting merely because she is pregnant." Trial Ct. Op. at 7. The trial court also found that the testimony was more prejudicial than probative: "The admission of the defendant being pregnant would interfere with the fact-finder being impartial, as it would likely cause the fact-finder to sympathize with the defendant based on emotions and not facts." *Id.* at 7-8.

"The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Bardo*, 709 A.2d 871, 877 (Pa.), *cert. denied*, 525 U.S. 936 (1998).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption

- 20 -

regarding a material fact. Once evidence is found to be relevant, it will be inadmissible only if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.

***Commonwealth v. Lilliock***, 740 A.2d 237, 244 (Pa. Super. 1999) (quotation marks and citations omitted), ***appeal denied***, 795 A.2d 972 (Pa. 2000). "Unfair prejudice" is "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403 cmt.

The trial court will be reversed only if an error in the admission of evidence contributed to the verdict. ***Commonwealth v. Konias***, 136 A.3d 1014, 1022 (Pa. Super.), ***appeal denied***, 145 A.3d 724 (Pa. 2016). This was a bench trial, and a trial court acting as the fact-finder "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." ***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014).

Viewed under these standards, this issue merits no relief. While a person's medical condition may be slightly probative as to whether and the extent to which that person would be involved in a brawl, the trial court was well within its discretion to find that potential prejudice from testimony about Appellant's pregnancy would substantially outweigh any probative value provided by that fact. ***See*** Pa.R.Evid. 403.

Furthermore, although some testimony directly discussing Appellant's pregnancy was excluded, other testimony referencing Appellant's pregnancy was admitted several times during the course of the trial. ***See*** N.T. at 38-39,

- 21 -

62, 87, 89, 121. This included testimony elicited by the prosecutor, *see id.* at 125, and language contained within a police incident report that was introduced into evidence upon stipulation by both parties, *id.* at 126. Therefore, the occasions on which the Commonwealth's objections were sustained by the court could not logically have contributed to the verdict. *Konias*, 136 A.3d at 1022.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2017