J-S04014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMICE NASH | : | |
| | : | |
| Appellant | : | No. 2145 EDA 2021 |

Appeal from the PCRA Order Entered September 13, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0011415-2013

BEFORE:   MURRAY, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 06, 2023**

Jamice Nash (Appellant) appeals *pro se* from the order denying his first petition for relief filed under the Post Conviction Relief Act (PCRA).[1]  The trial court convicted Appellant of attempted murder, aggravated assault, and related crimes after he slashed his seven-year-old daughter's neck with a knife.  We affirm.

The PCRA court explained:

On June 12, 2013, [Appellant] slit his [seven-year-old] daughter's throat.  Prior to slitting her throat, [Appellant] had been heard repeatedly threatening to kill the minor victim and her mother.  When police were called to the scene[, Appellant] was holding the minor victim with his left hand and a knife in his right

---

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.  The PCRA court permitted Appellant's counsel to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

hand. [Appellant] was screaming "this is not my daughter." After finally yielding to police commands to drop the knife and let go of the minor victim, she ran to the police with a gash in her neck and informed the police that [Appellant] had cut her neck with a knife. The bleeding was so bad, instead of waiting for an ambulance, the police immediately drove her to Einstein Hospital. Hospital records showed the victim received a ten-centimeter (close to four inches) laceration to her left interior neck. Although there was no extensive vascular damage, the minor victim was transferred to St. Christopher's Hospital where she [under]went surgical repair to close the sternal mastoid muscle. She ended up spending two days at St. Christopher's Hospital until she was discharged to the Department of Human Services. The minor victim testified that [A]ppellant was taking her to school when he took out the knife and sliced her neck. She subsequently testified that the incident was an accident. [Appellant] also testified to the same. The minor victim's grandmother and mother, who were present during the incident[,] believe [Appellant] was high at the time of the incident.

PCRA Court Opinion, 8/11/22, at 1-2. At trial, Appellant countered that he accidentally cut the victim when, while holding a knife, he tried to fix her uniform collar and she suddenly moved. N.T. Trial, 7/6/17, at 31-32.

Appellant's trial was delayed as a result of his repeated changes of counsel. On July 6, 2017, following a bench trial, the trial court convicted Appellant attempted murder, aggravated assault, unlawful restraint (serious bodily injury), endangering the welfare of children (EWOC) by a parent/guardian, and possession of an instrument of crime (PIC).[2] On September 12, 2017, the trial court sentenced Appellant to 10 – 20 years in prison, followed by 10 years' probation for attempted murder; and concurrent sentences of 10 – 20 years for aggravated assault; 10 years' reporting

---

[2] *See* 18 Pa.C.S.A. §§ 901, 2702, 2902, 4304, 907.

- 2 -

probation for EWOC; and five years' reporting probation for PIC. On direct appeal, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Nash*, 240 A.3d 119 (Pa. Super. 2020) (unpublished memorandum). Appellant did not seek allowance of appeal with the Pennsylvania Supreme Court.

Appellant timely filed the instant PCRA petition on December 29, 2020. The PCRA court appointed counsel, who filed a no-merit letter and a motion to withdraw from representation. Following appropriate notice under Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's petition on September 13, 2021. Appellant timely appealed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant argues the PCRA court improperly rejected his claims of ineffective assistance of counsel, and further asserts multiple claims of trial court error.[3] We limit our discussion to the ineffectiveness claims raised in

---

[3] Appellant's *pro se* brief does not comport with our Rules of Appellate Procedure. Appellant presents his issues in narrative form, together in one section. *See* Pa.R.A.P. 2111 (providing the requirements for an appellate brief); 2119(a) (providing "[t]he argument shall be divided into as many parts as there are questions to be argued[.]"). Several issues are waived because they contain no analysis or citation to supporting legal authority. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (*en banc*) (failure to conform to the Rules of Appellate Procedure results in waiver of the underlying issue); *see also* Pa.R.A.P. 2119(a), (b) (require, ng a properly developed argument for each question presented including a discussion of and citation to authorities).

Appellant's brief and preserved in Appellant's Pa.R.A.P. 1925(b) concise statement.[4]

Appellant presents the following issues:

(1) Whether trial counsel rendered ineffective assistance by failing to present the testimony of [Appellant's] or the victim's treating physicians.

(2) Whether trial counsel rendered ineffective assistance by failing to request a continuance.

(3) Whether trial counsel rendered ineffective assistance by failing to move for a mistrial.

(4) Whether trial counsel rendered ineffective assistance by failing to present an insanity defense.

(5) Whether the Commonwealth committed a **Brady**[5] violation, which was compounded by the denial of a trial continuance.

**See** Appellant's Brief at 2, 4, 6-7, 9-10, 11.

In his first four issues, Appellant claims trial counsel was ineffective. Counsel is presumed to be effective; a PCRA petitioner bears the burden of proving otherwise. **Commonwealth v. Thomas**, 270 A.3d 1221, 1226 (Pa.

---

[4] Appellant also argues claims of trial court error and sufficiency of the evidence which are not cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543 (setting forth the eligibility requirements for PCRA relief). To the extent Appellant claims trial counsel rendered ineffective assistance by not challenging the sufficiency of the evidence before trial, the claim lacks merit. Appellant was convicted of the charged crimes beyond a reasonable doubt. **See, e.g., Commonwealth v. Sanchez**, 82 A.3d 943, 984 (Pa. 2013) ("[O]nce a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial.").

[5] **See Brady v. Maryland**, 373 U.S. 83 (1963).

Super. 2022). To establish ineffective assistance of counsel, the petitioner must demonstrate (1) the underlying claim has arguable merit; (2) there was no reasonable basis for counsel's action or inaction; and (3) but for counsel's error, there is a "reasonable probability the result of the proceeding would have been different." *Id.* (quoting *Commonwealth v. Treiber*, 121 A.3d 435, 444 (Pa. 2015)). Failure to satisfy any of the three prongs is fatal to the claim. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "[C]ounsel cannot be held ineffective for failing to pursue a meritless claim[.]" *Thomas*, 270 A.3d at 1226 (citation omitted).

Appellant first argues trial counsel rendered ineffective assistance by not calling as a witness the victim's treating physician or his own physician. Appellant's Brief at 2 (capitalization modified). Appellant asserts:

> It should be even know[n] to a layman how important this doctor or [Appellant's] personal doctor would have been at trial. More importantly, it should be more of an issue to this Superior Court that counsel wasn't even given an opportunity to contact or review this doctor as a potential witness.

*Id.* (capitalization modified).

To prove arguable merit based on trial counsel's failure to call a witness, a PCRA petitioner must

> show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice[.]

*Commonwealth v. Robinson*, 278 A.3d 336, 343 (Pa. Super. 2022) (citations omitted).

- 5 -

Our review discloses Appellant failed to demonstrate the physicians were available and willing to testify at trial, and the omission of this testimony caused him prejudice. *See id.* Further, we agree with the PCRA's court's assessment that Appellant's claim lacks arguable merit and is waived:

> In order to be convicted of attempted murder, it must be shown that you took a direct step in furtherance of the crime. In the present case[,] we have a four-inch cut on the neck, which caused surgical repairs and a two[-]day hospital stay. Not to mention that had the knife severed the victim's jugular vein, which has no protection from bone or cartilage, we could have had a much more tragic result. There was also testimony … that [Appellant] was threatening to kill the victim and her mother. **It should also be noted that defense counsel asked [A]ppellant twice, during his testimony, whether there were any other witnesses [Appellant] would like to call. In both instances[,] [Appellant] answered no.** Based on the area of the knife wound, the immediate action of the police rushing the victim to the hospital, the testimony of the victim's mother and grandmother and [A]ppellant's own testimony, [t]his [c]ourt believes the outcome of the proceedings would not have changed based upon the testimony of the treating doctor[.]

PCRA Court Opinion, 8/11/22, at 4. Appellant's first issue merits no relief. *See id.*; *see also* 42 Pa.C.S.A. § 9543(a)(3) (providing PCRA petitioner must plead and prove "the allegation of error has not been previously … waived."); *Thomas*, 270 A.3d at 1226; *Spotz*, 84 A.3d at 311.

In his second issue, Appellant argues trial counsel rendered ineffective assistance by not requesting a continuance on the day of trial. Appellant's Brief at 2. Appellant asserts he met counsel for the first time that day. *Id.* at 3. Appellant acknowledges he

> went through a parade of ineffective counsels appointed by the court until he finally retained counsel himself. At this time the

court set aside our constitution in order to get this trial over with as "[the trial court] made it clear." No person would agree that [Appellant] received a fair trial of counsel that he meets [*sic*] the same day trial commences.

Appellant's Brief at 3 (capitalization modified). According to Appellant, "defense counsel had no time to review pertinent evidence in this case. It is uncertain if counsel even knew [Appellant] had recently been declared incompetent." *Id.* at 9 (capitalization modified). Appellant concedes "**trial counsel requested a continuance** because she knew that she needed to investigate the case and plan in order to be effective[.]" Appellant's Brief at 10 (capitalization modified, emphasis added). Additionally, we agree with the PCRA court's assessment:

> Defense counsel (Mary Moran, Esquire,) was privately retained by [Appellant] and entered her appearance on June 5, 2017, knowing that the trial was to commence on June 5, 2017. This case had been on the docket for close to four years due to defense continuances and a parade of attorneys at [A]ppellant's request. [Appellant] himself retained new representation that day. [Appellant] was of course present at the commencement of trial **and never raised an objection** during the colloquy of [the trial judge].

PCRA Court Opinion, 8/11/22, at 5-6 (emphasis added). Appellant's second issue merits no relief. *See* 42 Pa.C.S.A. § 9543(a)(3); *Thomas*, 270 A.3d at 1221, 1226.

In his third issue, Appellant argues counsel rendered ineffective assistance by not moving for a mistrial. Appellant's Brief at 11. Appellant states:

> [O]n cross-examination[,] trial counsel asked Officer [Allen] Carroll[,] "Prior to this occasion had you any interaction with [Appellant] before?" Officer Carroll responded that he had. Defense counsel followed up, "You had interaction with [Appellant]?" Carroll responded[,] "Yes, but 110 East. It's a playground park over there. A couple of times I received calls for a male …." He was interrupted by defense counsel. The court responded by stating[,] "You asked him."

*Id.* (capitalization and punctuation modified, citation omitted). After a brief recess, and with the agreement of counsel, the question was withdrawn and the answer stricken. *Id.* Appellant argues this evidence nevertheless prejudiced the trial court, which sat as fact finder. *See id.* We disagree.

"A judge, as factfinder, is presumed to disregard inadmissible evidence and consider only competent evidence." *Commonwealth v. Davis*, 421 A.2d 179, 183 n.6 (Pa. 1980) (citations omitted); *see also Commonwealth v. McFadden*, 156 A.3d 299, 309 (Pa. Super. 2017) (reiterating that a trial court acting as fact finder "is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence" (citation omitted)). Appellant fails to demonstrate that the trial court was unable to disregard the withdrawn question and stricken answer. Appellant's third issue does not merit relief.

In his fourth issue, Appellant argues counsel rendered ineffective assistance by not presenting an insanity defense. Appellant's Brief at 4. Appellant claims his counsel had no opportunity to raise this defense. *Id.* Appellant recognizes the trial court

was aware of [Appellant's] prior diagnosis of PTSD and the strong medications he was prescribed. Evidence certainly could have supported a temporary insanity claim, that is[,] a diminished capa[c]ity induced by medication and mental illness. Each doctor who examined [Appellant] stated he was not competent. The court[-]appointed psychiatrist concluded that [Appellant] was not competent….

*Id.* (capitalization modified). Appellant asserts that as an infant, an uncle threw him against a tree, causing a traumatic brain injury, and that he is taking the medications Zyprexa and Zoloft. *Id.* Appellant asserts he did not understand the legal proceedings and did not cooperate with his counsel. *Id.*

Section 315 of the Crimes Code provides that the "mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense" when the defendant was legally insane. 18 Pa.C.S.A. § 315(a). To prevail on an insanity defense, the defendant

must prove by a preponderance of the evidence that, at the time he committed the offense, due to a defect of reason or disease of mind, he either did not know the nature and quality of the act or did not know that the act was wrong. 18 Pa.C.S. § 315; *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687, 690-91 (Pa. 1991).

A defense of insanity acknowledges commission of the act by the defendant, while maintaining the absence of legal culpability. *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 788 (Pa. 2004); *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173, 175 (Pa. 1993). Where a defendant has testified at trial and has denied committing a crime, this Court has declined to deem counsel ineffective for failing to present a defense that would have been in conflict with his client's own testimony. *Hughes*, 865 A.2d at 788; *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 455 (Pa. 1995).

*Commonwealth v. Smith*, 17 A.3d 873, 901 (Pa. 2011). To be declared incompetent to stand trial, an appellant must establish he was either unable to understand the nature of the proceedings against him or to participate in his own defense. *Id.* at 899-900.

Here, Appellant participated at trial and testified in his defense. Appellant testified that the morning of June 12, 2013, he drove the victim to his mother's home before school. N.T., 7/6/17, at 29. After the victim dressed for school, she went to the kitchen. *Id.* at 30. Appellant explained that when he entered the kitchen, he retrieved from the table a sheetrock knife he wanted to use for "a basement job that morning[.]" *Id.* at 31. Appellant stated:

> [T]he rain had fallen the day before and messed up somebody's basement, and I already had cut some of the Sheetrock out. So I said, all right, I will bring the knife over there to finish up the job.
>
> When I am going down the steps – I had … capri pants on, and the pockets was short. I had the knife in my pockets. So the knife fell out [of] my pocket when I'm going down the stairs. So I put it back in my pocket. It fell out again.
>
> My car was right out at the front of the house. So I said, all right, being that my car was right out in front of the house, I will just hold the knife in my hand and bring it to the car.
>
> I was walking in front of [the victim]. While I am walking in front of her, I turn around to see [the victim] behind me. When I said, "[] come on," I observed her uniform collar – like she had on a uniform collar like this one. It was tucked in like this. And, so, I said "Come on, …. Let me fix you." She said, "No, Dad," and moved away. When she moved away, that's the only time I think that the incident could have occurred when she moved and said, "No. I want to do it." So I turned back around. When [*sic*] I

- 10 -

heard my mom say … something like, "Nash." When I turned around, I was like all in shock. Like, what's going on? Then I seen a little spec on her. That's when I got, like, in shock, like, what's going on? That's when I dropped the knife right there and was just staring at my daughter. I couldn't come to understand, like, what is going on.

At the same time, I seen all this rush, like the cops and everybody started coming in. The whole time, I am just, like, what's going on? I was so quiet. I couldn't say nothing, cause I was in a state of shock. I am, like, what's going on. What is really going on with this thing.

*Id.* at 31-32.

Our review discloses Appellant was competent at trial and participated in his defense. Specifically, Appellant testified on his own behalf, supporting his trial strategy that the incident was an accident. *See id.* As the PCRA court explained:

Appellant's own testimony indicated that he was not experiencing an episode of mental illness. He even testified that he was calm and not upset. It was the strategy of [A]ppellant and counsel to claim that the incident was an accident. … [B]ased on the testimony of the victim, who stated she thought it was an accident[,] and [Appellant's] own testimony, the strategy was to prove it was an accident ….

PCRA Court Opinion, 8/11/22, at 7. Appellant's claim of ineffectiveness, based on counsel's failure to present an insanity defense or challenge his competency, merits no relief. *See Smith*, 17 A.3d at 901 (declining to find counsel ineffective for failing to present a defense in conflict with his client's testimony).

In his fifth and final issue, Appellant asserts a *Brady* violation by the Commonwealth. Appellant argues:

- 11 -

> In this case, the prosecution cannot escape the fact that the assigned investigator in this case, Detective Justin Montgomery, has numerous claims of misconduct lodge[d] against him. According to an article that was published nine months prior to [] trial, Detective Justin Montgomery outlines misconduct … regarding his investigation of an alleged indecent assault complaint. … This detective also testified at [Appellant's] trial, even stating himself that there were discrepancies with the filing of this incident. **See also** [N.]T. VOL 3, 6/16/17[, at] 32-34 demonstrating that someone forged a signature  a "log" in this case.

Appellant's Brief at 6. Appellant claims his counsel had no time to look for this information. **Id.** Appellant posits counsel's advice on this issue "couldn't be construed as competent because counsel didn't even have all the requisite information of this case." **Id.**

In **Brady**, the United States Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment …." **Brady**, 373 U.S. at 87. **Brady**'s mandate is not limited to pure exculpatory evidence; impeachment evidence also falls within **Brady**'s parameters and must be disclosed by prosecutors. **U.S. v. Bagley**, 473 U.S. 667, 677 (1985). To establish a **Brady** violation, a defendant must show:

> (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.

**Commonwealth v. Haskins**, 60 A.3d 538, 545 (Pa. Super. 2012). The burden rests with the defendant to prove by reference to the record that evidence was withheld or suppressed. **Id.** Further, the evidence must have

- 12 -

been in the exclusive control of the prosecution. ***Id.*** No ***Brady*** violation occurs where the defendant knew or with reasonable diligence could have discovered the evidence, or where the evidence was available to the defense from a non-governmental source. ***Id.***

Appellant concedes in his brief that this evidence regarding Detective Montgomery was in "an article that was published nine months prior to [his] trial[.]" Appellant's Brief at 6. Because the evidence was available from a non-governmental source, and discoverable with reasonable diligence, Appellant's ***Brady*** claim fails. ***See Haskins***, ***supra***.

Order affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: <u>4/6/2023</u>