J-S29030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DWIGHT RUTLEDGE | |
| Appellant | No. 2038 EDA 2016 |

Appeal from the Judgment of Sentence dated September 18, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013043-2008

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SOLANO, J.: **FILED SEPTEMBER 29, 2017**

Appellant Dwight Rutledge appeals from the judgment of sentence imposed after the trial court revoked his probation on September 18, 2012. We affirm.

We recount the facts and history as set forth in the trial court's opinion:

> On June 22, 2008, Appellant and his girlfriend, Lashakeen Spears-Garrison ("Spears") began arguing about paying rent for the apartment at which they were co-tenants. Spears called 911, prompting two Philadelphia Police Department ("PPD") officers to respond to the disturbance. The officers attempted to defuse the situation by talking to both Appellant and Spears, advised Spears to apply for a protection order if she wanted Appellant to be removed from the apartment, and then left. This intervention failed to have the intended effect, however, as Spears and Appellant continued to quarrel, culminating with Appellant menacing Spears with a loaded handgun and

---

[*] Former Justice specially assigned to the Superior Court.

threatening to kill her. Spears then fled the apartment, found the aforementioned officers in the street outside, and told them about what had just transpired. The officers reentered the apartment and, following direction from Spears, discovered a loaded, silver-and-black 9mm semiautomatic handgun in Appellant's dresser, as well as a small amount of marijuana in one of Appellant's shirts inside a closet. Consequently, Appellant was arrested.

Appellant was then held in pre-sentence detention and, on January 5, 2009, filed a Petition for Release on Nominal Bail, which this Court granted on February 3, 2009. Trial was then scheduled for May 5, 2009; however, Appellant failed to appear on that date, prompting th[e trial c]ourt to issue a bench warrant. This warrant was lifted on May 19, 2009, and trial was rescheduled for July 13, 2009. The Commonwealth then requested a continuance, which this Court granted on July 13, 2009. Appellant waived his right to a jury trial and, after a bench trial on September 14, 2009, th[e trial c]ourt found him guilty of Unlawful Possession of a Firearm,[1] a second-degree felony. Appellant was then released, pending sentencing on November 19, 2009, but failed to appear on that date, causing th[e trial c]ourt to issue another bench warrant. Appellant was subsequently apprehended and, on January 7, 2010, th[e trial c]ourt lifted the bench warrant and granted the Commonwealth's Motion to Revoke/Release and Forfeit Bail. On March 16, 2010, [the trial c]ourt sentenced Appellant to a term of time served to 23 months, along with five years of probation, and ordered him to be paroled immediately.

[1] 18 Pa. C.S. § 6105(a)(1).

Appellant quickly chose not to comply with the terms of his release, failing drug tests on two occasions, being extremely uncooperative, and going to great lengths to circumvent mandatory reporting and drug testing. Another bench warrant was issued on November 29, 2010, which was replaced by a detainer order on December 7, 2010. On December 21, 2010, th[e trial c]ourt lifted the detainer order and continued Appellant's parole.

Throughout all of this, Appellant and Spears had apparently maintained their romance and continued to live together; however, the passage of time had done nothing to diminish the

volatility of their relationship as, on April 27, 2011, Appellant was arrested after allegedly stabbing Spears multiple time[s] in her thighs and arms with a kitchen knife. A bench warrant was issued the following day, due to this technical violation of Appellant's probation, which was replaced by a detainer order on May 6, 2011. On May 24, 2011, this Court ordered that Appellant's Violation of Probation ("VOP") hearing would be continued until further notice, so as to allow for disposition of the criminal case stemming from the April 27, 2011 incident. Ultimately, Spears failed to appear in court on April 27, 2012, prompting the Commonwealth to *nolle pros* all of the stabbing-related charges that had been lodged against Appellant. Th[e trial c]ourt then revoked Appellant's probation on May 25, 2012 and scheduled his VOP hearing for June 1, 2012. On that date, th[e trial c]ourt sentenced Appellant to a term of Time Served to 23 months' incarceration, plus three years of probation, ordered that he be paroled immediately, and explicitly told him that he was not allowed to live with Spears anymore.

Unfortunately, this did not dissuade Appellant from continuing to violently lash out at Spears. Less than two weeks later, on June 12, 2012, Philadelphia Police Officers Brison and DiGenio responded to a domestic incident at Spears' residence. They entered Spears' apartment building and, hearing a woman screaming for help, rushed up the building's stairs to Spears' third-floor apartment. The door was locked, so the officers began banging on it and calling for the apartment's occupants to allow them entry. Spears then yelled for help from inside the apartment, and made clear that she was being prevented from opening the door, whereupon the officers started banging harder and told whoever was inside that they were going to kick in the door. At that point, they heard a lot of furniture moving and Appellant finally opened the door. Officers Brison and DiGenio then subdued Appellant, while Spears was ["completely hysterical crying," "disarrayed," and] screaming that he had put a knife to her. Spears' clothes were a mess and the furniture in the apartment was completely destroyed. [N.T., 7/17/12, at 13-15.] As recounted to the officers by Spears, Appellant had forced his way into her apartment and turned violent when she asked him to leave, striking her a number of times, attempting to stab her, and holding both Spears and one of her grandchildren at knifepoint. Consequently, the officers arrested Appellant, after which he was charged with Aggravated Assault,

Simple Assault, Reckless Endangerment of Another Person, and Endangering the Welfare of a Child.

Appellant was then brought before th[e trial c]ourt on July 17, 2012 for yet another VOP hearing. After listening to testimony from Officer [Mark] DiGenio, [whose testimony that Spears' screams for help and communication to him that Appellant had held a knife to her were admitted over Appellant's objection, N.T., 7/17/12, at 12-14, the trial c]ourt terminated Appellant's parole and revoked his probation, expressing disbelief at the situation and telling Appellant:

> I couldn't have been more clear that you should contact Spears under no circumstances – you've been telling me that Spears is crazy. And yet you were there at her apartment. You have told me repeatedly that you keep being put in jail by her lies and manipulations and mental health issues, that's what you've been telling me for years and I said to you, "Then you stay away from her."

Th[e trial c]ourt then ordered a pre-sentence investigation, and informed the parties that Appellant would be sentenced after a hearing on September 18, 2012.

At that hearing, Appellant vigorously declared his innocence, telling th[e trial c]ourt that Spears was a mentally ill drug addict whom he cared for and considered to be his wife, but who, in spite of this bond, had nevertheless fabricated all of her allegations over the years about his violent behavior. Coupling this claim with ones about his poor health, as well as the harm caused by these "false accusations" to his family and his livelihood, Appellant asked th[e trial c]ourt not to give him a sentence necessitating time in state prison. . . . [The trial c]ourt sentenced Appellant to a term of 5-to-10 years' incarceration due to his technical violation of the probation terms for his Unlawful Possession of a Firearm conviction, with credit for time served, and ordered him to stay away from Spears upon his release from prison. [The sentencing hearing transcript contains no objection from Appellant challenging the discretionary aspects of his sentence. N.T., 9/18/12, at 18-19.]

Thereafter, Appellant did not appeal this decision; however, he did submit a Post-Conviction Relief Act Petition ("PCRA Petition") on April 18, 2013, followed by an Amended PCRA Petition on

February 3, 2015, in which Appellant claimed that his VOP hearing counsel had provided ineffective assistance by failing to act on Appellant's timely request that he file such an appeal. Accordingly, Appellant requested that he be granted permission to both submit post-sentence motions and appeal th[e trial c]ourt's judgment of sentence *nunc pro tunc*.

Trial Ct. Op. at 1-5 (internal brackets, citations to the record, ellipses, and some quotation marks omitted).

On December 14, 2015, the trial court entered an order scheduling a hearing on the PCRA petition for April 25, 2016. On April 25, 2016, the trial court granted a motion for continuance and rescheduled the PCRA hearing for June 27, 2016. Then --

On June 14, 2016, th[e trial c]ourt granted Appellant's Amended PCRA Petition in part, thereby denying him the chance to file untimely post-sentence motions, while reinstating his direct appeal rights and giving him 30 days within which to file such an appeal.[1] Appellant subsequently filed the instant appeal on June 22, 2016[.]

Trial Ct. Op. at 5 (citations to the record omitted). Appellant raises the following issues:

[I.] Did the trial court at the VOP hearing err in accepting into evidence statements made to a police officer by [A]ppellant's alleged wife/girlfriend because these statements were not excited utterances but hearsay?

[II.] Did the trial/PCRA court err in denying [A]ppellant the right to file post sentence motions from the VOP/judgment of

---

[1] The certified record is therefore unclear as to whether a hearing was ever held on the PCRA petition, including on Appellant's request to reinstate his post-sentence rights *nunc pro tunc*. However, the Commonwealth states in its brief to this Court that no evidentiary hearing was held. Commonwealth's Brief at 18.

- 5 -

sentence *nunc pro tunc* because this denied [A]ppellant his right to contest the excessiveness of his sentence on appeal?

[III.] Was the sentence imposed by the trial court, which was 5 to 10 years in state prison, the maximum allowable punishment[,] unjust, improper, manifestly unreasonable, and an abuse of discretion because the sentence imposed was contrary to the fundamental norms which underlie the sentencing process?

Appellant's Brief at 2 (issues reordered).

## Admission of Evidence

Appellant contends that "the trial court erred in considering the statements made [by Spears] to the police officer." Appellant's Brief at 6, 9. In particular, Appellant objects to consideration of Spears' cries for help and her assertion that Appellant held a knife to her throat during Appellant's confrontation with her. In **Commonwealth v. McFadden**, 156 A.3d 299 (Pa. Super. 2017), we stated:

The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion.

Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. Once evidence is found to be relevant, it will be inadmissible only if its probative value is substantially outweighed by the danger of unfair prejudice or confusion.

"Unfair prejudice" is "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403 cmt. . . .

> A trial court acting as the fact-finder is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence.

156 A.3d at 309 (brackets and most quotation marks and citations omitted).

Preliminarily, we note that the trial court found this issue waived "due to insufficient specificity" in a "manifestly deficient Statement of Errors." Trial Ct. Op. at 6. Paragraph 7 of Appellant's Statements of Errors provided: "The trial court erred at the VOP hearing in allowing the hearsay testimony of an alleged female know[n] as Karatin Spears (ph) NT 7-17-12 @ 9-17." We disagree with the trial court and find that this challenge sufficiently articulates what Appellant alleges to be the trial court's error, *i.e.*, that the testimony that appears at pages 9 to 17 of the notes of testimony for July 17, 2012, includes alleged hearsay that the trial court erroneously admitted. We thus conclude that Appellant has properly preserved this issue for our review. ***See generally*** Pa.R.A.P. 1925(b)(4).

> According to Appellant:
>
> [T]he statement[s] made to the Police Officer were hearsay and not excited utterances because the declarant had time to reflect when she made these statements and was not under the stress of excitement caused by the event. [Appellant is] entitled to a new VOP hearing because improper hearsay was admitted at the VOP hearing.

Appellant's Brief at 9. The trial court held that Spears' statements were admissible under an exception to the hearsay rule "which enables a trial court to admit 'excited utterances,' which are statements relating to a startling event or condition, made while the declarant was under the stress

- 7 -

of excitement that it caused.'" Trial Ct. Op. at 7 (citing Pa.R.E. 801(c), 802, 803(2); *Commonwealth v. Stokes*, 615 A.2d 704, 712 (Pa. 1992) (quoting *Commonwealth v. Green*, 409 A.2d 371, 373-74 (Pa. 1979))). The trial court declared that Ms. Spears' statements "clearly constituted excited utterances, meaning they were admissible and that th[e trial c]ourt properly overruled Appellant's objection." *Id.*

Under the Rules of Evidence, "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. However, "[c]ommunications that are not assertions are not hearsay. These would include questions, greetings, expressions of gratitude, **exclamations**, offers, instructions, warnings, etc." Comment to Pa.R.E. 801 (emphasis added). "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2). "[T]his declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Commonwealth v. Murray*, 83 A.3d 137, 157 (Pa. 2013).

Viewed under these standards, this issue merits no relief. The first statements in question – Spears' screams for help – were merely

exclamations and thus are excluded from the definition of hearsay. *See* Trial Ct. Op. at 3 (citing N.T., 7/17/12, at 10-11); Pa.R.E. 801 cmt.

Spears's second statement – that Appellant had held a knife to her throat – was made while police were arresting Appellant. Trial Ct. Op. at 3 (citing N.T., 7/17/12, at 13). Spears was described as "completely hysterical," "crying, screaming," and "disarrayed" at the time she made the statement. N.T., 7/17/12, at 16. There is no indication in the record that Spears' statement was made in response to a police officer's question or that it "emanated in whole or in part from [her] reflective faculties." *Murray*, 83 A.3d at 157. The trial court was therefore well within its discretion to admit Officer DiGenio's testimony about Spears' second statement pursuant to the excited utterance exception to the hearsay rule. Pa.R.E. 803(2).

## Sentencing

Appellant's remaining issues relate to his sentencing, and we address them together. "A challenge to the discretionary aspects of a sentence is not appealable as of right. Therefore, before we may exercise jurisdiction to reach the merits of Appellant's claim, we must verify that Appellant's appeal is properly before this Court[.]" *Commonwealth v. Luketic*, 162 A.3d 1149, 1159 (Pa. Super. 2017) (quotation marks, citations, and internal brackets omitted).

We will exercise our discretion to consider such a petition only if (1) the appellant has filed a timely notice of appeal; (2) he has preserved the

sentencing issue at the time of sentencing or in a motion to reconsider and modify his sentence; (3) he presents the issue in a properly framed statement in his brief under Rule 2119(f) of the Rules of Appellate Procedure, pursuant to **Commonwealth v. Tuladziecki**, 522 A.2d 17 (Pa. 1987); and (4) in the words of Section 9781(b) of the Sentencing Code, 42 Pa.C.S. § 9781(b), "it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter." **See, e.g.**, **Commonwealth v. Flowers**, 149 A.3d 867, 870 (Pa. Super. 2016); **Commonwealth v. Haynes**, 125 A.3d 800, 807 (Pa. Super. 2015), **appeal denied**, 140 A.3d 12 (Pa. 2016); **Commonwealth v. Zelinski**, 573 A.2d 569, 574-75 (Pa. Super.), **appeal denied**, 593 A.2d 419 (Pa. 1990).

Here, Appellant filed a timely appeal and included a Rule 2119(f) statement in his brief. Thus, he has clearly satisfied the first and third requirements. He also has satisfied the fourth requirement by raising a "substantial question" regarding his sentence. We have explained:

> A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process. . . . Thus, a sentencing court abuses its discretion when it considers the criminal act, but not the criminal himself. The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant, and prohibiting a sentence of total confinement without consideration of the nature and circumstances of the crime, and the history, character, and condition of the defendant.

*Luketic*, 162 A.3d at 1160 (quotation marks, brackets, and citations omitted). "[A] substantial question that the sentence was not appropriate under the Sentencing Code may occur even where a sentence is within the statutory limits." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa. Super.) (citation omitted), *appeal denied*, 13 A.3d 475 (Pa. 2010). According to Appellant's Rule 2119(f) statement, "the sentence imposed was contrary to the fundamental norms which underlie the sentencing process" and was "not appropriate." Appellant's Brief at 3. Appellant has thus raised a substantial question. *See Luketic*, 162 A.3d at 1160; *Crump*, 995 A.2d at 1282.

With respect to the second requirement, the sentencing hearing transcript contains no objection from Appellant challenging the discretionary aspects of his sentence. N.T., 9/18/12, at 18-19. The docket sheet accompanying the certified record does not indicate that any post-sentence motion was filed. In his amended PCRA petition, Appellant claimed trial counsel was ineffective for failing to file this requested post-sentence motion and requested reinstatement of his post-sentence rights. Am. PCRA Pet., 2/3/15, at 2 ¶ 4.a. & *ad damnum* clause; Mem. in Supp. of Am. PCRA Pet., 2/3/15, at 1; Trial Ct. Op. at 5; *see Commonwealth v. Fransen*, 986 A.2d 154 (Pa. Super. 2009) (PCRA petitioner-appellant must plead in PCRA petition that he was deprived of right to file post-sentence motion in order to be entitled to relief on that issue). The record clearly reflects that Appellant

was granted permission to file a direct appeal *nunc pro tunc* and has done so in a timely manner, but the PCRA court did not reinstate Appellant's right to file a post-sentence motion *nunc pro tunc*. Appellant contends that it was error for the trial court to not reinstate his right to file a post-sentence motion.[2]

We conclude that we need not reach this reinstatement issue because even if Appellant had been permitted to file a post-sentence motion *nunc pro tunc*, he would not be entitled to relief. ***Cf. Commonwealth v. Griffin***, 65 A.3d 932, 936 (Pa. Super. 2013) (remanding to allow the record to be supplemented to include post-sentence motion was unnecessary, because appellant's allegation that his sentence failed to take into account his rehabilitative needs under 42 Pa.C.S. § 9721(b) and thus was manifestly excessive entitled him to no relief, even if properly preserved via post-sentence motion), ***appeal denied***, 76 A.3d 538 (Pa. 2013). We reach that conclusion because a trial court has broad discretion when imposing a sentence. We find no abuse of that discretion here.

We have frequently noted that we review only to determine whether there was an abuse of discretion:

---

[2] The Commonwealth argues Appellant waived the sentencing issue by failing to raise it at his VOP sentencing hearing or by not filing a post-sentence motion; it does not argue that Appellant waived the issue because the PCRA court denied him permission to file a post-sentence motion *nunc pro tunc*. Commonwealth's Brief at 7.

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment – a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000) (quotation marks and citations omitted). When probation is revoked, the Sentencing Code states that "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation." 42 Pa.C.S. § 9771(b). Total confinement may be imposed only if:

> (1) the defendant has been convicted of another crime; or
>
> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>
> (3) such a sentence is essential to vindicate the authority of the court.

*Id.* § 9771(c).

> [A] trial court does not necessarily abuse its discretion in imposing a seemingly harsher post-revocation sentence where the defendant received a lenient sentence and then failed to adhere to the conditions imposed on him. In point of fact, where the revocation sentence was adequately considered and sufficiently explained on the record by the revocation judge, in light of the judge's experience with the defendant and awareness of the circumstances of the probation violation, under the appropriate deferential standard of review, the sentence, if within the statutory bounds, is peculiarly within the judge's discretion.

*Commonwealth v. Pasture*, 107 A.3d 21, 28-29 (Pa. 2014) (citation omitted).

Appellant asserts:

The sentence imposed by the trial court, which was 5 to 10 years in state prison, the maximum allowable sentence, was unjust, improper, manifestly unreasonable, and an abuse of discretion because the trial court failed to consider [Appellant's] age, rehabilitative needs and family history[.] The trial court in imposing sentence considered only [Appellant]'s criminal history including, improperly, arrests that did not lead to convictions . . . [T]here was no reason stated on the record to impose the maximum state sentence especially in light of [Appellant]'s medical conditions which include congestive heart failure, hypertension, diabetes and anxiety. . . . The [trial] court[] not only violated, 42 Pa.[C.S. §] 9771(b)[-](c) in imposing its sentence of total confinement, [but it] did not consider any of the factors required by 42 Pa.[C.S. §] 9721(b).

Appellant's Brief at 7-8 (emphasis omitted).

In response to this argument in the trial court, the court stated:

Th[e trial c]ourt found [Appellant's] excuses and arguments to be utterly lacking, responding:

You know, family members will try to stand by and support loved ones in relationships that have addictions and mental health problems, but that support doesn't always end up in the police arriving at the scene with the victim stabbed and barricades and arrests. So, the kind of support that, whatever is happening, it always ends up with the police there, at least the cases that you and I have had over and over again, with Spears being stabbed and guns and knives being involved, and her in a state of utter, complete panic, and you know, she's crying and she's a mess. It's absolutely not normal.

Every time we've been together, you've told me this same story. I've known about your medical conditions. I'm trying to take your word for it about Spears manipulating you. Over and over again, I've -- the guidelines way back

- 14 -

> when for Unlawful Possession of a Firearm were 48 to 60 months. You know what I've been doing. And at that last listing, on June 1, 2012, we had a very, very clear discussion that you were not to have any contact with Spears, and the police reports indicate that it was a very chaotic and violent scene at her house 11 days later. Independent witnesses came in about a week and a half after it. I am very concerned for the safety of this victim. You have a history now of 10 arrests, three convictions, four commitments, five violations, three revocations, and you were arrested for a major felony, with I guess the same victim as before, a week and a half after I sentenced you. For all these reasons, I can no longer take any chances keeping you in county.

> Appellant's allegation that th[e trial c]ourt committed an abuse of discretion regarding his revocation sentence simply has no basis in reality, given Appellant's disturbingly consistent brutality, volatile relationship with Spears, and utter disregard for the probationary requirements that had been imposed upon him by th[e trial c]ourt. . . . [The trial court] gave Appellant multiple chances to avoid significant terms of incarceration, sentencing him to time served on two separate occasions and instructing him to stay away from the victim Ms. Spears. It was th[e trial c]ourt's hope that Appellant would heed the call of reason after being shown such leniency, especially given its coupling with the threat of serious consequences for noncompliance. Instead, Appellant's actions proved to th[e trial c]ourt that he posed a serious, clear-and-present danger to Spears and her family members. Consequently, in order to both punish Appellant for his violent intransigence and to protect Spears, as well as the public at-large, th[e trial c]ourt appropriately exercised its discretionary authority by sentencing Appellant to the statutory maximum for a second-degree felony.

Trial Ct. Op. at 4, 9-10 (footnote omitted; some formatting added) (quoting N.T., 9/18/12, at 10-11, 17-18).

There was no abuse of discretion. Appellant's argument that "[t]he trial court in imposing sentence considered only [Appellant]'s criminal history," Appellant's Brief at 7, is belied by the record, which demonstrates

that the trial court considered a myriad of factors in imposing sentence. For example, contrary to Appellant's claim, the court did consider Appellant's medical conditions. **Compare** Trial Ct. Op. at 4 (quoting N.T., 9/18/12, at 17), **with** Appellant's Brief at 7. Appellant does not explain his contention that his age should have been a factor in imposing sentence, and we can discern no reason why Appellant's age should have required imposition of a different sentence here. Likewise, Appellant provides no explanation why his "family history" should be considered a mitigating factor. The trial court based its sentence on Appellant's lack of success on probation and failure to rehabilitate when given the opportunity, **see** Trial Ct. Op. at 4, thereby refuting Appellant's argument that the trial court did not consider his rehabilitative needs, Appellant's Brief at 7.

As for Appellant's claim that the trial court "improperly [considered] arrests that did not lead to convictions," Appellant's Brief at 7, "[a] judge may consider unadjudicated arrests in sentencing a defendant, so long as the arrests are not regarded as establishing criminal conduct, and even arrests that result in acquittals, if the judge is aware of the acquittal." **Commonwealth v. Bowers**, 25 A.3d 349, 356 (Pa. Super. 2011), **appeal denied**, 51 A.3d 837 (Pa. 2012).[3] Here, the trial court recognized that

---

[3] **See also, e.g.**, **Commonwealth v. P.L.S.**, 894 A.2d 120, 131 (Pa. Super. 2006); **Commonwealth v. Vernille**, 418 A.2d 713, 719 (Pa. Super. 1980)) ("It was not improper for the sentencing judge to consider the defendant's alleged involvement in other unlawful activity for which he was not charged,
*(Footnote Continued Next Page)*

Appellant had not been convicted of some of the charges. **See** N.T., 9/18/12, at 17; Trial Ct. Op. at 4.

Finally, in conflict with Appellant's assertion that the trial court "did not consider any of the factors required by" 42 Pa.C.S. § 9721(b), Appellant's Brief at 8, is the fact that the trial court explicitly stated that Appellant's sentence was based on the court's concern over the safety of the victim, her family, and the independent witnesses at the "very chaotic and violent scene" at Spears' home; the trial court thus considered "the protection of the public" and "impact on the life of the victim and the community." Trial Ct. Op. at 4 (quoting N.T., 9/18/12, at 17), 9; 42 Pa.C.S. § 9721(b). Thus, based upon our review of the record, we hold that the trial court did not abuse its discretion in sentencing Appellant and that Appellant's sentencing issues are without merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *9/29/2017*

*(Footnote Continued)* ————————

tried, or convicted" (internal brackets and quotation marks omitted)), **appeal denied**, 906 A.2d 542 (Pa. 2006).