J-S79032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES L. FLOWERS, JR., | : | |
| | : | |
| Appellant | : | No. 1004 MDA 2018 |

Appeal from the Judgment of Sentence June 14, 2018
in the Court of Common Pleas of Schuylkill County
Criminal Division at No(s):  CP-54-CR-0000033-2017

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED FEBRUARY 28, 2019**

James L. Flowers, Jr. ("Flowers"), *pro se*, appeals from the judgment of

sentence entered following his conviction of delivery of a controlled substance

(heroin) and criminal conspiracy.[1]  We affirm.

The trial court summarized the relevant history underlying the instant

appeal as follows:

> A jury trial was held on April 3, 2018, on the [above-described
> charges].  During the trial, [Flowers] chose to act *pro se*.  Robert
> Reedy, Esquire[,] was appointed as stand[-]by counsel.  During
> the trial, the Commonwealth presented evidence and testimony
> related to a transaction for the sale of heroin that occurred on
> August 26, 2016[,] at the residence located at 511 East Market
> Street, Pottsville, PA.  Trooper Christopher C. Keppel [("Trooper
> Keppel")] testified that on that date[,] he was working undercover
> for the Pennsylvania State Police.  He arranged to meet Brittany
> Geisinger [("Geisinger")] to purchase heroin.  He met her at the
> parking lot next to 511 East Market Street.  He entered that
> residence with [] Geisinger and they waited until [Flowers] and a

---

[1] *See* 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903.

white male entered. [Flowers] discussed with [] Geisinger who he was. Trooper Keppel then testified that he conversed with [] Flowers about people they both knew. Trooper Keppel testified that [Flowers] obtained an item from the white male and handed it to him. Trooper Keppel gave [Flowers] $250.00. He then paid [] Geisinger a finder's fee of $40.00. The Commonwealth presented evidence that the item that Trooper Keppel received was heroin.

Trial Court Opinion, 8/17/18, at 1-2.

A jury subsequently convicted Flowers of the above-stated charges. With the benefit of a pre-sentence investigation report, the trial court sentenced Flowers to a prison term of two to four years for his conviction of delivery of a controlled substance. For his conviction of criminal conspiracy, the trial court imposed a concurrent prison term of two to four years. The trial court credited Flowers for the time he served in jail between December 26, 2016, and April 10, 2017 (109 days). Thereafter, Flowers filed the instant timely appeal. On June 18, 2018, Flowers filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. On June 25, 2018, Flowers filed an "Amended Petition for 1925(b) Statement."

Flowers presents the following claims for our review:

I. Did the trial court abuse [its] discretion thus, violating [Flowers's] right to due process, which resulted in prejudice under [Pennsylvania] Rules of Criminal Procedure 571 and 587[,] by ignoring [his] Motion to Dismiss without [a] hearing or directing the Commonwealth to show cause?

II. Did the trial court abuse its discretion pursuant to Pa. Rule of Criminal Procedure 103 in violation of [Flowers's] due process rights when rendering an erroneous ruling upon [Flowers's] Motion *in Limine*?

- 2 -

III. Did the trial court abuse its discretion by allowing the jury to convict [Flowers of] criminal conspiracy after Motion [*sic*] for a judgment of acquittal challenging [that the] arresting officer's testimony was insufficient to establish conspiracy in accordance with 18 Pa.C.S.A. § 903?

IV. Did the trial court abuse its discretion by neglecting a fatal variance between the Commonwealth's discovery to [*sic*] [Flowers] and evidence submitted to the jury under Pa. Rule of Criminal Procedure 704(b), which resulted in a **Brady**[2] violation and a deprivation of fundamental fairness?

V. Did the trial court abuse its discretion by failing to apply the exclusionary rule to determine if [the] arresting officer entered the residence without warrant or whether [the] person that provided access has common/apparent authority to do so wherein, the independent source doctrine protects against tainted evidence, fruit of the poisonous tree and unlawfully obtained evidence?

VI. Did the Commonwealth invoke a "mandatory presumption[,]" [t]hus prejudicing [Flowers] in the eyes of the jury, which shifted the burden of proof that ultimately affected the strength of "reasonable doubt and burden of proof" during closing argument?

VII. Did the trial court abuse [its] discretion or misapply the law where the trial court permitted the jury to consider hearsay testimony over [Flowers's] objection, which displays partiality, bias and ill[-]will on the sole basis of [Flowers's] objection alone?

VIII. Did the trial court abuse [its] discretion or commit an error of law by failing to provide [Flowers] proper time credit for all time spent in custody as provided for by 42 Pa.C.S.[A.] § 9760[,] *et seq.*?

---

[2] **See Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding that the prosecution must disclose evidence favorable to the accused that is material either to guilt or to punishment).

Brief for Appellant at 4-5.

Flowers first claims that the trial court improperly denied his Motions to dismiss, filed pursuant to Pennsylvania Rules of Criminal Procedure 571 and 587, without a hearing. Brief for Appellant at 10. Flowers contends that he was not arraigned within 10 days of the filing of the criminal Informations against him. *Id.* In support, Flowers asserts that the Informations were "initiated" on December 16, 2016, and filed on January 6, 2017. *Id.* Flowers states that the "earliest date featured on the selected Informations is that of 1-6-2017, for the event 'awaiting filing of informations.'" *Id.* Flowers relies upon conflicting dates in the record in support of his claim that the case should have been dismissed. *Id.* at 10-11.

Pursuant to Pennsylvania Rule of Criminal Procedure 571, arraignment must take place "no later than 10 days after the information has been filed." Pa.R.Crim.P. 571. Rule 587 provides that "[u]pon motion and a showing that an information has not been filed within a reasonable time, the court may order dismissal of the prosecution, or in lieu thereof, make such other order as shall be appropriate in the interests of justice." Pa.R.Crim.P. 587(a)(1).

In its Opinion, the trial court addressed Flowers's claim and concluded that it lacks merit. *See* Trial Court Opinion, 8/17/18, at 4. Our review of the record confirms the trial court's assessment that the criminal Information was filed on February 13, 2017, and that Flowers's arraignment took place on February 23, 2017, thereby complying with Rule 571. We therefore affirm on

the basis of the trial court's Opinion with regard to Flowers's first claim. **See id.**

In his second claim, Flowers argues that the trial court improperly denied his Motion *in Limine*. Brief for Appellant at 11. Flowers contends that "the arresting officer in this case gained access to [his] residence via an individual who did not possess common or apparent authority to allow access to law enforcement officials." **Id.** According to Flowers, the officers were investigating Geisinger at the time they entered the residence. **Id.** at 12. Flowers contends that the officers should have investigated whether Geisinger had common or apparent authority to grant access to his residence. **Id.** Because the officers' testimony establishes that Geisinger did not have authority to grant access to Flowers's residence, Flowers argues, the evidence seized from him constituted fruits of the poisonous tree. **Id.** at 12-13. Flowers further contends that the trial court improperly construed his Motion *in Limine* as a *habeas corpus* filing, thereby depriving him of his right to due process and equal protection. **Id.** at 13.

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. **See** Trial Court Opinion, 8/17/18, at 5-6. We agree, and affirm on the basis of the trial court's Opinion with regard to this claim. **See id.**; **see also** N.T. (Omnibus Hearing), 4/6/17, at 26, 29 (wherein Flowers acknowledges that the trial court was considering his Omnibus Motion at that hearing).

In his third claim, Flowers challenges the sufficiency of the evidence underlying his conviction of criminal conspiracy. Brief for Appellant at 13. Flowers asserts that he stood trial alone, and that the Commonwealth presented no evidence that an agreement existed between himself and another person. *Id.* According to Flowers, "the [C]ommonwealth put forth absolutely no evidence of the volume or quality to overcome the presumption of innocence." *Id.*

As this Court has explained,

[a] claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

The trial court addressed Flowers's challenge to the sufficiency of the evidence underlying his conspiracy conviction, and concluded that it is without merit. *See* Trial Court Opinion, 8/17/18, at 6-7. The trial court's findings are supported in the record, and its legal conclusions are sound. *See id.* We therefore affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

In his fourth claim, Flowers asserts that the trial court neglected a "fatal variance" between the discovery produced by the Commonwealth and the

evidence presented at trial. Brief for Appellant at 14. Flowers asserts that "newly discovered evidence" demonstrates "perjured testimony, fraud upon the court, entrapment and a *Brady* violation[.]" *Id.* In support, Flowers directs our attention to the State Police Property Inventory, which, Flowers asserts, varied from the evidence produced during discovery. *Id.* Flowers also states that when Commonwealth Exhibit Number 9 was produced during discovery, it did not include the signatures, dates, times or badge numbers of officers, while the document produced at trial included such information. *Id.* According to Flowers, he did not become of aware of this until after trial. *Id.* at 15. Flowers also directs our attention to the fact that the document was not submitted by the arresting officer, but by another officer, which "renders this case/conviction based upon second-hand evidence, perjured testimony and a *Brady* violation." *Id.* Flowers states that he preserved this claim in a Motion for Extraordinary Relief. *Id.*

Our Supreme Court has explained that,

in order to establish a *Brady* violation, a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. However, [t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. Rather, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Williams*, 168 A.3d 97, 109 (Pa. 2017) (internal citations and quotation marks omitted).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 8/17/18, at 7-8. We affirm on the basis of the trial court's Opinion with regard to this claim. *See id.*

In his fifth claim, Flowers argues that the trial court erred by admitting evidence obtained following the unlawful entry into his residence without a warrant, or the permission of a person with apparent authority over the residence. Brief for Appellant at 16. Referring to the exclusionary rule, Flowers contends that the trial court failed to determine whether the officer's "entry/search of the residence in question[] was the product of proper investigative procedures and whether permission obtained to conduct said police action was within the proper/lawful constraints[.]" *Id.*

"The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." *Commonwealth v. Weber*, 189 A.3d 1016, 1020 (Pa. Super. 2018) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 1020-21 (citation omitted).

As our Supreme Court has explained,

[t]he Fourth Amendment [to the United States Constitution] protects the people from unreasonable searches and seizures. A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. One such exception is a consensual search, which a third party can provide to police, known as the apparent authority exception.

A third party with apparent authority over the area to be searched may provide police with consent to search. Third[-]party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007) (internal citations and quotation marks omitted). The determination of apparent authority must be based on the totality of the circumstances, and if it is ambiguous whether the third party has apparent authority, "a police officer should make further inquiries to determine the status of the consenting party." *Commonwealth v. Blair*, 575 A.2d 593, 598 (Pa. Super. 1990).

In its Opinion, the trial court reasoned that the evidence was properly admitted, stating, "Trooper Keppel testified that he was invited into the residence by [] Geisinger to conduct the drug transaction. [Flowers] then authorized him to stay when he arrived and completed the transaction." Trial Court Opinion, 8/17/18, at 8.

At trial, Trooper Keppel testified that on August 25, 2016, while working undercover, he arranged for the purchase of heroin through Geisinger. N.T., 4/3/18, at 31-32. Trooper Keppel explained that he had engaged in approximately eleven prior drug transactions with Geisinger. *Id.* at 41. Geisinger directed Trooper Keppel to go to the parking lot next to 511 East Market Street in Pottsville. *Id.* at 41. Trooper Keppel arrived at the parking lot, at which time Geisinger walked from 511 East Market Street to the parking lot. *Id.* at 32, 41. According to Trooper Keppel, "I met with [] Geisinger, and I was instructed to come into the residence." *Id.* at 32. Trooper Keppel followed Geisinger into the residence. *Id.* at 33, 42. Two other women entered the residence and, thereafter, Flowers entered the residence. *Id.* at 33. Trooper Keppel then testified as follows:

> [Trooper Keppel]: … I did have a conversation with [] Flowers about some people that he knew, he was asking me if I knew. I advised him that I did. And at that time, we did conduct a transaction for the heroin.
>
> Q. [The Commonwealth]: And could you describe with great particularity how that transaction transpired?
>
> A. [] Flowers obtained an item from the white male, in [*sic*] return handed it to me. I then exchanged him [*sic*] the $250 of official funds.
>
> I questioned the heroin because it wasn't packaged how we get it; and I was told it was five bundles, or a brick, although it was a bundle in each bag rather than individually packaged.

*Id.* at 34. Thus, the record supports the trial court's determination, and we discern no error or abuse of discretion in this regard. *See* Trial Court Opinion, 8/17/18, at 8. Accordingly, we cannot grant Flowers relief on this claim.

In his sixth claim, Flowers argues that the prosecutor committed prosecutorial misconduct during his closing argument. Brief for Appellant at 17. Specifically, Flowers asserts that the prosecutor committed misconduct when he stated, "[W]hy would this officer of the law, lie on [] Flowers[,] the defendant?" *Id.* According to Flowers, this statement constituted "improper opinion/bolstering of the officer's testimony[.]" *Id.* Flowers asserts that the prosecutor's statement improperly shifted the burden of proof to Flowers, causing him prejudice. *Id.*

Our review of the record discloses that Flowers failed to lodge any objection to the prosecutor's closing argument. Therefore, he has waived any claim related thereto. *See Commonwealth v. Sanchez*, 82 A.3d 943, 969-70 (Pa. 2013) (stating that, in order to preserve for appellate review an objection to the opening or closing argument of opposing counsel, the objection must be specific and brought to the attention of the trial court as soon as practical). Further, even if Flowers had preserved this claim, we would conclude that it lacks merit.

As our Supreme Court has explained, "[w]e review the trial court's rulings for abuse of discretion." *Id.* at 981.

> Although a prosecutor may comment on the credibility of the defendant or other witnesses, it is improper for a prosecutor

- 11 -

to express a personal belief as to their credibility. A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made. The effect of the prosecutor's remarks must be evaluated in the context and atmosphere of the entire trial.

Moreover, not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial.

*Id.* (internal quotation marks and citations omitted).

In its Opinion, the trial court addressed Flowers's claim and correctly concluded that it lacks merit. *See* Trial Court Opinion, 8/17/18, at 8-9. Even if Flowers had properly preserved this claim, we would agree with the trial court's assessment that the prosecutor's comments "were not prejudicial or unfair under the circumstances and considering the contents of [Flowers's] closing argument." *See id.* at 9.

In his seventh claim, Flowers argues that the trial court improperly admitted hearsay testimony. Brief for Appellant at 18. Specifically, Flowers contends that the trial court improperly admitted Trooper Keppel's testimony regarding a communication between the Trooper and Geisinger, "for purposes of justification for entering [Flowers's] residence." *Id.* According to Flowers, the trial court "permitted the jury to hear a second-hand account (hearsay) of

- 12 -

matters supposedly elicited from [] Geisinger." ***Id.*** at 19. Flowers points out that Geisinger did not testify at trial. ***Id.*** at 20.

In its Opinion, the trial court addressed Flowers's claim and concluded that it lacks merit. ***See*** Trial Court Opinion, 8/1718, at 9-10. We agree with the sound reasoning of the trial court and affirm on this basis with regard to Flowers's seventh claim. ***See id.***

Finally, in his eighth claim, Flowers argues that the trial court improperly failed to give him credit for time that he served in custody, in accordance with 42 Pa.C.S.A. § 9760. Brief for Appellant at 21. According to Flowers, he is entitled to credit for the time he served in custody following April 7, 2018, at which time he was granted bail. ***Id.*** Flowers states that although he was granted bail, he was not released from custody. ***Id.***

Section 9760 provides, in relevant part, as follows:

Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S.A. § 9760(1).

In its Opinion, the trial court addressed Flowers's claim, and concluded that he is not entitled to credit for time served as a result of his arrest on different charges. ***See*** Trial Court Opinion, 8/17/18, at 3-4. Because the record supports the trial court's determination, we affirm on the basis of the trial court's Opinion with regard to this claim. ***See id.***

- 13 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/28/2019</u>

IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, PA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,      :      CP-54-CR-000033-2017

     : 

     : 

         v.      : 

     : 

JAMES L. FLOWERS, JR.,      : 

         Defendant      : 

OPINION PURSUANT TO PA.R.A.P. 1925

GOODMAN, J.

The Defendant, James L. Flowers, JR has filed an appeal from the sentencing Order entered on June 14, 2018 against Defendant. On or about June 18, 2018, the Defendant filed a 1925 (b) Statement in which he raised seven (7) issues with three to four subcategories for each issue. The Defendant has not set forth these issues in a clear or concise manner. On or about June 25, 2018, the Defendant filed an "Amended Petition for 1925 (b) Statement" raising a separate issue. As an amended petition typically replaces the original Petition, and the issues set forth in the original 1925 (b) statement are neither clear nor concise, we believe that the Defendant has waived the issues raised in the original 1925 (b) statement. Nevertheless, we will address the issues raised in each document.

A jury trial was held on April 3, 2018 on the charges of Delivery of a Controlled Substance and Conspiracy to Deliver a Controlled Substance. During the trial, the Defendant appointed as stand by counsel. During the trial, the Commonwealth presented evidence and testimony related to a transaction for the sale of heroin that occurred on August 26, 2016 at the residence located at 511 East Market Street, Pottsville, PA. Trooper Christopher C. Keppel testified that on that date he was working undercover for the Pennsylvania State Police.

1

He arranged to meet Brittany Geisinger to purchase heroin. He met her at the parking lot next to 511 East Market Street. He entered that residence with Miss Geisinger and they waited until the Defendant and a white male entered. The Defendant discussed with Miss Geisinger who he was. Trooper Keppel then testified that he conversed with Mr. Flowers about people they both knew. Trooper Keppel testified that the Defendant obtained an item from the white male and handed it to him. Trooper Keppel gave the Defendant $250.00. He then paid Miss Geisinger a finder's fee of $40.00. The Commonwealth presented evidence that the item that Trooper Keppel received was heroin.

Following the trial, the jury convicted the Defendant on both charges. On or about June 14, 2018 following a pre-sentence investigation report, the Defendant was sentenced on the delivery charge to imprisonment of 2 to 4 years and on the conspiracy charge to 2 to 4 years concurrent to the sentence on the delivery charge. He received credit of 109 days for December 26, 2016 to April 10, 2017.

In the Amended Petition for 1925 (b) Statement, the Defendant asserts that he was denied credit for time served in accordance with 42 Pa.C.S.A. § 9760. We have derived the following issues from the Defendant's 1925 (b) statement.

1. This trial court erred in denying the Motion to Dismiss in which he requested dismissal of the charges because he failed to receive an arraignment within ten (10) days of the filing of the information.

2. The trial court erred in dismissing the Defendant's Motion in Limine seeking to challenge the admissibility of evidence obtained after a warrantless, unlawful entry and unlawful police conduct.

3. The Defendant asserts that there was insufficient evidence to support the conviction for criminal conspiracy.

4. The Defendant challenges the weight of the evidence against him and asserts a violation in that the Property Record Sheet submitted as evidence during trial contained different information that the sheet he received in discovery.

2

5. The Defendant argues that the Exclusionary Rule applies because the evidence was obtained from a residence in which the person who authorized the entry by the arresting officer did not have the authority to allow him to enter the residence.

6. The Defendant contends that the Commonwealth invoked a mandatory presumption when the prosecutor commented on the veracity of the officer during the closing argument.

7. The Defendant contends that this Court improperly dismissed his ~~··· ~~evidence and that the entry of hearsay ~~evidence impacted the verdict against him.~~

In the Amended Petition, the Defendant contends that he did not receive proper credit for time served. The Defendant asserts that he is currently serving a State Corrections Institution sentence of 27 to 54 months for delivery of a controlled substance; possession with intent to deliver and possession of a controlled substance which was imposed on October 12, 2016 in case number 1181-2015. The Defendant asserts that while he was serving that sentence he was arrested for the charges in the ~~··· for bail on this~~ case following a bail hearing. He was not released from custody due to his incarceration in case number 1181-2015. He received credit in the instant matter for 109 days from 12/26/2016 through 4/7/2017. He asserts that he was entitled to receive credit for the time periods from the arrest date of 12/23/2016 through present.

The Defendant underlined the language that awards credit "for all time spent in custody under the former charge that has not been credited against another sentence." ~~·· that was credited to the~~ sentence in 1181-2015. In fact, the Defendant was not entitled to the 109 days credit which was given to him as eligibility for pre-commitment credit is controlled by 42 Pa.C.S. 9760. This statute allows credit for all time spent in custody "as a result of the criminal charge for which a prison sentence is imposed." Once an individual has been

3

sentenced by a Pennsylvania Court, he is no longer in custody as a result of a criminal charge or charges for any other offense. After sentencing by any court, statutory eligibility to accumulate additional increments of creditable time has ended. Time spent in custody after sentencing is applied towards satisfaction of the sentence being served. A sentenced prisoner is not entitled to receive a duplicate credit for this same period of time on a separate sentence subsequently imposed for another offense. **Commonwealth v. Lloyd,** *353 Pa. Super. 241, 509 A.2d 868 (1986).*

Therefore, the Defendant is not entitled to additional credit.

In the 1925 (b) Statement, the Defendant first asserts that this Court erred in denying the Motion to Dismiss in which he requested dismissal of the charges because he failed to receive an arraignment within ten (10) days of the filing of the information. By Order dated March 6, 2018 this Court denied the Motion to Dismiss. The sole basis for the Motion to Dismiss was the Defendant's contention that he was arraigned more than 10 days after the information was filed in violation of Pa.R.Crim.P. 571. This Rule provides that: "[u]nless otherwise provided by local court rule, or postponed by the court for cause shown, arraignment shall take place no later than 10 days after the information has been filed." **Pa.R.Crim.P. 571** The Defendant asserts that he produced evidence that a criminal docket number was available before February 13, 2017 which he contends proves the information was filed before that date. The record reflects that the matter was held over following the preliminary hearing and a docket was created before February 13, 2017. However, the record clearly reflects that the criminal information was filed on February 13, 2017 and the Defendant was arraigned on February 23, 2017. The Defendant was arraigned within ten days of the date on which the information was filed.

4

Second, the Defendant claims that this Court abused its discretion in dismissing the Motion in Limine. The Defendant filed a Motion in Limine on or about January 29, 2018. The Commonwealth filed a response on or about February 27, 2018. By Order dated March 6, 2018, this Court denied the Motion in Limine as untimely in accordance with Pa.R.Crim.P. 578, which provides that all pretrial requests for relief shall be included in one omnibus motion.

The Defendant did file an Omnibus Motion on which a hearing was held on April 6, 2017. The Defendant challenges that he did not have the opportunity to present the suppression issues because the Omnibus Motion was improperly treated as a Habeas Motion. Rather, a review of the record shows that the Defendant raised the suppression issue for the first time in the Omnibus Motion. At the hearing, the Defendant elected to proceed pro se. He stated on several occasions to the Court at the hearing that he wanted to challenge the evidence and have the charge of conspiracy dismissed. At the time he stated that he wished to have the hearing on having the charges dismissed, the District Attorney suggested that they not proceed and that stand by counsel be appointed. The Defendant replied "Your honor, I am well aware of what I am asking you right now, and I do not need the Commonwealth to speak for me at all pertaining to what I need. I am representing myself." *Notes of Testimony, April 6, 2017 at page* 22 The Court indicated that it could not even understand the Omnibus Motion and asked the Defendant what he was seeking. He replied that he was asking to challenge the sufficiency of the evidence related to criminal conspiracy. The Court indicated that he would have his hearing to challenge the evidence.

5

Thus, the Defendant filed an Omnibus Motion. He had a hearing at which he had the opportunity to present evidence and cross-examine witnesses. At the hearing he requested to have the criminal conspiracy charge dismissed. At his request, the Court treated the Omnibus hearing as a Habeas hearing. The Court denied the Omnibus Motion on the record and entered an Order dated April 7, 2017denying the Omnibus Motion that was treated as a Habeas Motion. The record is clear that the Defendant was afforded the opportunity to address the suppression issue. The Motion in Limine raising suppression issues was properly denied as untimely.

Third, the Defendant challenges the sufficiency of the evidence as to criminal conspiracy. The Defendant asserts that the arresting officer's testimony was insufficient to establish criminal conspiracy as it is necessary for the Commonwealth to prove the guilt of two conspirators to convict one. Pursuant to § 903 (a):

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

**18 Pa.C.S.A. § 903 (a)** "To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy."
*Com. v. McCall,* 2006 PA Super 329, ¶ 6, 911 A.2d 992, 996. "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that

6

attend its activities." *Id.* "The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* It is not necessary to establish the conviction of a co-conspirator as even "the acquittal of an alleged conspirator in a separate trial does not preclude finding his only alleged coconspirator guilty of conspiracy in subsequent proceedings." *Com. v. Snowdy*, 412 Pa. Super. 493, 502, 603 A.2d 1044, 1048 (1992).

Here the Commonwealth presented ample evidence of conspiracy through the testimony of Trooper Keppel as to the events on August 25, 2016. The testimony of Trooper Keppel reflects the following. While working in an undercover capacity with several members of the state police and Schuylkill County Task Force, he met with Miss Geisinger to purchase heroin. He met her at the parking lot next to the residence of 511 East Market Street, Pottsville, PA and they entered the residence. They waited until the Defendant arrived with a white male. The Defendant spoke with Miss Geisinger and then the Defendant spoke with Trooper Keppel. The Defendant obtained heroin from the white male who entered the residence with him. He gave the heroin to Trooper Keppel in exchange for $250.00. Trooper Keppel then paid Miss Geisinger a Finder's Fee. The officer's testimony is sufficient to support the jury verdict of guilty as to the conspiracy charge.

Fourth, the Defendant challenges the weight of the evidence against him and asserts a violation in that the Property Record Sheet submitted as evidence during trial contained different information that the sheet he received in discovery. Here the Defendant contends that a Brady violation occurred because he did not receive Commonwealth Exhibit 9 before trial but received Defense Exhibit 5 which is a property record form that is not complete. The Defendant had ample opportunity to cross-

7

examine the Commonwealth witnesses as to this evidence. The Defendant waived this issue but not raising it during trial. Furthermore, we do not believe that this issue rises to a Brady challenge even if the Defendant received an incomplete form as it does not contain exculpatory evidence.

***Commonwealth v. Puksar***, 597 Pa. 240, 951 A.2d 267, 283 (2008).

Fifth, the Defendant argues that the Exclusionary Rule applies because the evidence was obtained from a residence in which the person who authorized the entry by the arresting officer did not have the authority to allow him to enter the residence. The Defendant had the opportunity to present evidence as to this issue at the Omnibus Hearing on April 6, 2017. He did not present any evidence at the time that Brittany Geisinger did not have authority to allow Trooper Keppel to enter the residence. Further it is well settled that [t]hird party consent is valid when police reasonably believe a third party has authority to consent." ***Commonwealth v. Strader***, 931 A.2d 630, 634 (Pa. 2007). Trooper Keppel testified that he was invited into the residence by Miss Geisinger to conduct the drug transaction. The Defendant then authorized him to stay when he arrived and completed the transaction. The evidence was properly admitted.

Sixth, the Defendant contends that the Commonwealth invoked a mandatory presumption when the prosecutor commented on the veracity of the officer during the closing argument. During closing argument, the prosecutor stated as follows:

> We have to prove to you beyond a reasonable doubt that there was a drug delivery committed on the 20ᵗʰ of August, 2016, and that the drug delivery happened between Mr. Flowers and Trooper Keppel. And we have done that through the Trooper's own testimony. He told you what happened. He has no reason to get up there and just make something up about somebody. If Brittany really did it, he has no reason to go up there and say somebody else did it. He gave you the truth from the witness stand. And if you believe his testimony, then there is certainly evidence here to convict Mr. Flowers beyond a reasonable doubt.

8

We note initially that the Defendant did not object to the prosecutor's comments during the trial and that, therefore, this issue is waived. Further, "[i]t is well settled that as long as a prosecutor does not assert his personal opinions, he or she may, within reasonable limits, comment on the credibility of a Commonwealth witness." *Com. v. Simmons*, 541 Pa. 211, 247, 662 A.2d 621, 639 (1995). "This is especially true when the credibility of the witness has been previously attacked by the defense." *Id.*

A review of the Defendant's closing argument shows that he is challenging the credibility of Trooper Keppel's testimony. He essentially asserts during closing argument that Brittany Geisinger was responsible for the transaction and that Trooper Keppel never met him and did not conduct a sale of heroin with him. The Commonwealth questions whether Trooper Keppel would have a reason to fabricate testimony. Even if this issue is not waived, the prosecutor's comments were not prejudicial or unfair under the circumstances and considering the contents of the Defendant's closing argument.

Finally, the Defendant contends that this Court erred in dismissing his objection to hearsay evidence and that the entry of hearsay evidence impacted the verdict against him. During the trial, the Defendant objected to hearsay on two occasions. He objected to Trooper Keppel's testimony that the Defendant had a brief conversation with Miss Geisinger after he entered the residence. *Notes of Testimony*, April 3, 2018, at p. 34. This objection was denied because the conversation involved the Defendant. He also objected to Trooper Keppel's testimony on redirect that Miss Geisinger stated to him "This Jimmy" when he entered the apartment. *Notes of Testimony*, April 3, 2018, at p. 34. This objection was denied because the Defendant opened the door to the testimony as he had questioned the officer about whether Miss Geisinger introduced him.

9

As to the first objection, "in criminal cases, this Court has consistently held that a defendant's out-of-court statements are party admissions and are exceptions to the hearsay rule." *Com. v. Edwards*, 588 Pa. 151, 183, 903 A.2d 1139, 1157–58 (2006) Therefore, Trooper Keppel's testimony as to the Defendant's conversation was properly admitted. As to the second objection, a review of the transcript shows that the Defendant extensively questioned Trooper Keppel as to whether Miss Geisinger introduced them. *Notes of Testimony*, April 3, 2018, at p. 65. He clearly opened the door to the Commonwealth's question.

We further incorporate and attach our Orders dated April 7, 2017 and March 6, 2018 as part of the trial court opinion pursuant to P.R.A.P. 1925.